**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000690**
**30-NOV-2021**
**08:12 AM**
**Dkt. 75 MO**

NOS.
CAAP-20-0000690 and CAAP-20-0000691


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


**NO. CAAP-20-0000690**
(CR. NO. 16-1-1545)
STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ALABANZA C. TUIMALEALIIFANO, also known as Chris,
Defendant-Appellant

_____

**NO.  CAAP-20-0000691**
(CR. NO. 1CPC-19-0001189)
STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ALABANZA C. TUIMALEALIIFANO,
Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 16-1-1545; CR. NO. 1CPC-19-0001189)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

In this consolidated appeal, Defendant-Appellant

Alabanza C. Tuimalealiifano, also known as Chris

(**Tuimalealiifano**), appeals from the:  (1) October 5, 2020

Judgment of Conviction and Sentence; Notice of Entry in 1CPC-19-0001189 (**Judgment in 2019 Case**); and (2) the October 5, 2020 Judgment of Conviction and Sentence; Notice of Entry in 1PC161001545 (**Judgment in 2016 Case**) both entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] Tuimalealiifano challenges the Circuit Court's October 10, 2020 Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Withdraw Guilty Pleas (**FOFs/COLs in 2016 Case**) denying his motion to withdraw his guilty pleas in the 2016 Case. Tuimalealiifano also challenges the Circuit Court's October 8, 2020 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Withdraw Guilty Pleas, Filed July 30, 2020 (**FOFs/COLs in 2019 Case**) denying his motion to withdraw his guilty pleas in the 2019 Case.

I. BACKGROUND

On September 29, 2016, a grand jury indicted Tuimalealiifano on eight counts for offenses arising out of events occurring on or about September 24, 2016, which resulted in the injury of one person and death of another: Count 1, Criminal Attempt, in violation of Hawaii Revised Statutes (**HRS**) § 705-500 (2014)[2], Murder in the Second Degree, in violation of

---

[1] The Honorable Karen T. Nakasone presided in both cases.

[2] HRS § 705-500 provides:

> **§ 705-500 Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
> (continued...)

HRS § 707-701.5 (2014)[3], Terms of Imprisonment for First and

Second Degree Murder and Attempted First and Second Degree

Murder, pursuant to HRS § 706-656 (2014)[4] (**Attempted Murder**

---

[2](...continued)
    (a)    Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
    (b)    Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
    (2)    When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
    (3)    Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

[3]    HRS § 707-701.5 provides:

        **§ 707-701.5  Murder in the second degree.**  (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
        (2)    Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

[4]    HRS § 706-656 provides:

        **§ 706-656  Terms of imprisonment for first and second degree murder and attempted first and second degree murder.** (1) Persons eighteen years of age or over at the time of the offense who are convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment without the possibility of parole.
        As part of such sentence, the court shall order the director of public safety and the Hawaii paroling authority to prepare an application for the governor to commute the sentence to life imprisonment with parole at the end of twenty years of imprisonment; provided that persons who are repeat offenders under section 706-606.5 shall serve at least the applicable mandatory minimum term of imprisonment.
        Persons under the age of eighteen years at the time of the offense who are convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment with the possibility of parole.

(continued...)

3

**Second**); Count 2, Manslaughter, in violation of HRS § 707-702(1)(a) (2014)[5]; Count 3, Robbery in the First Degree, in violation of HRS § 708-840(1)(b)(i) (2014)[6] (**Robbery First**), and/or Robbery in the Second Degree, in violation of HRS § 708-840(1)(b)(ii) (2014)[7] (**Robbery Second)**; Count 4, Carrying or Use

---

[4](...continued)
(2)  Except as provided in section 706-657, pertaining to enhanced sentence for second degree murder, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole.  The minimum length of imprisonment shall be determined by the Hawaii paroling authority; provided that persons who are repeat offenders under section 706-606.5 shall serve at least the applicable mandatory minimum term of imprisonment.
    If the court imposes a sentence of life imprisonment without possibility of parole pursuant to section 706-657, as part of that sentence, the court shall order the director of public safety and the Hawaii paroling authority to prepare an application for the governor to commute the sentence to life imprisonment with parole at the end of twenty years of imprisonment; provided that persons who are repeat offenders under section 706-606.5 shall serve at least the applicable mandatory minimum term of imprisonment.

[5]    HRS § 707-702(1)(a) provides in pertinent part:

    **§ 707-702  Manslaughter.**  (1) A person commits the offense of manslaughter if:
        (a)   The person recklessly causes the death of another person[.]

[6]    HRS § 708-840(1)(b)(i) provides in pertinent part:

    **§ 708-840  Robbery in the first degree.**  (1) A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
        . . . .
        (b)   The person is armed with a dangerous instrument or a simulated firearm and:
            (i)   The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance[.]

[7]    HRS § 708-840(1)(b)(ii) provides in pertinent part:

    **§ 708-840  Robbery in the first degree.**  (1) A person commits the offense of robbery in the first degree if, in
                            (continued...)

of Firearm in the Commission of a Separate Felony, Attempted Murder, in violation of HRS § 134-21 (2011)[8] (**Firearm in Commission of Felony**); Count 5, Firearm in Commission of Felony, Manslaughter; Count 6, Firearm in Commission of Felony, Robbery; Count 7, Ownership or Possession Prohibited, When, in violation

---

[7](...continued)
the course of committing theft or non-consensual taking of a motor vehicle:
. . . .
    (b)  The person is armed with a dangerous instrument or a simulated firearm and:
. . . .
        (ii)  The person threatens the imminent u use of force against the person of anyone present with intent to compel acquiescence to the taking of or escaping with the property[.]

[8]    HRS § 134-21 provides:

    **§ 134-21 Carrying or use of firearm in the commission of a separate felony; penalty.** (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection when the separate felony is:
    (1)  A felony offense otherwise defined by this chapter;
    (2)  The felony offense of reckless endangering in the first degree under section 707-713;
    (3)  The felony offense of terroristic threatening in the first degree under section 707-716(1)(a), 707-716(1)(b), or [707-716(1)(e)]; or
    (4)  The felony offenses of criminal property damage in the first degree under section 708-820 or criminal property damage in the second degree under section 708-821 and the firearm is the instrument or means by which the property damage is caused.
    (b)  A conviction and sentence under this section shall be in addition to and not in lieu of any conviction and sentence for the separate felony; provided that the sentence imposed under this section may run concurrently or consecutively with the sentence for the separate felony.
    (c)  Any person violating this section shall be guilty of a class A felony.

5

of HRS § 134-7(b) and (h) (2011)[9] (**Ownership or Possession**);

Count 8, Place to Keep Pistol or Revolver, in violation of HRS §

134-25 (2011)[10] (**Place to Keep**).

On August 19, 2019, by Felony Information, the State

also charged Tuimalealiifano on two counts for allegedly causing

harm to a correctional worker:  Count 1, Assault in the Second

---

[9]     HRS § 134-7(b),(h) provides in pertinent part:

> **§ 134-7  Ownership or possession prohibited, when;
> penalty. . . .**
>      (b)   No person who is under indictment for, or has
> waived indictment for, or has been bound over to the circuit
> court for, or has been convicted in this State or elsewhere
> of having committed a felony, or any crime of violence, or
> an illegal sale of any drug shall own, possess, or control
> any firearm or ammunition therefor.
>      . . . .
>      (h)   Any person violating subsection (a) or (b) shall
> be guilty of a class C felony; provided that any felon
> violating subsection (b) shall be guilty of a class B
> felony.  Any person violating subsection (c), (d), (e), (f),
> or (g) shall be guilty of a misdemeanor.

[10]     HRS § 134-25 provides:

> **§ 134-25  Place to keep pistol or revolver; penalty.**
> (a) Except as provided in sections 134-5 and 134-9, all
> firearms shall be confined to the possessor's place of
> business, residence, or sojourn; provided that it shall be
> lawful to carry unloaded firearms in an enclosed container
> from the place of purchase to the purchaser's place of
> business, residence, or sojourn, or between these places
> upon change of place of business, residence, or sojourn, or
> between these places and the following:
>      (1)   A place of repair;
>      (2)   A target range;
>      (3)   A licensed dealer's place of business;
>      (4)   An organized, scheduled firearms show or
> exhibit;
>      (5)   A place of formal hunter or firearm use training
> or instruction; or
>      (6)   A police station.
>      "Enclosed container" means a rigidly constructed
> receptacle, or a commercially manufactured gun case, or the
> equivalent thereof that completely encloses the firearm.
>      (b)   Any person violating this section by carrying or
> possessing a loaded or unloaded pistol or revolver shall be
> guilty of a class B felony.

Degree, in violation of HRS § 707-711(1)(c) (2014)[11]; and Count 2, Assault in the Second Degree in violation of HRS § 707-711(1)(a) (2014)[12].

Prior to any plea negotiations in the 2016 Case, Tuimalealiifano had two changes of counsel. Eventually, Salina Kanai Althof (**Althof**)[13] was appointed as Tuimalealiifano's defense counsel in the 2016 Case. Althof also represented Tuimalealiifano in his 2019 Case.

Before Althof's appointment, Tuimalealiifano requested and received various trial continuances in the 2016 Case. On January 22, 2019, the trial was again continued to October 28, 2019, but this time "set with a panel of 150 ordered for a two week jury trial." However, on September 20, 2019, Althof orally moved to continue the trial on the 2016 Case based on her recent appointment as Tuimalealiifano's counsel, and the Circuit Court set a new trial week for February 10, 2020. Similarly, on

---

[11]     HRS § 707-711(1)(c) provides in pertinent part:

> **§ 707-711  Assault in the second degree**.  (1) A person commits the offense of assault in the second degree if:
> . . . .
> (c)   The person intentionally or knowingly causes bodily injury to a correctional worker, as defined in section 710-1031(2), who is engaged in the performance of duty or who is within a correctional facility[.]

[12]     HRS § 707-711(1)(a) provides in pertinent part:

> **§ 707-711  Assault in the second degree**.  (1) A person commits the offense of assault in the second degree if:
> (a)   The person intentionally or knowingly causes substantial bodily injury to another[.]

[13]     The record interchangeably refers to her as Ms. Althof and Ms. Kanai.

October 24, 2019, Althof also made an oral motion to continue the trial for the 2019 Case and requested the trial be set for February 10, 2020.  The Circuit Court granted the oral motion and set a new trial week for February 10, 2020.

The State took several measures to prepare for trial. The Circuit Court granted the State's Motion for Determination of Fifth Amendment Privilege and Appointment of Counsels Filed 9/28/18 and ordered court-appointed counsel for four of the State's witnesses.  All four witnesses received court-appointed counsel.  The Circuit Court also issued subpoenas for witnesses for the State, as well as sought two bench warrants for State witnesses to appear.

On January 27, 2020, Althof again made an oral motion for continuance of trial week in the 2016 Case and 2019 Case because "a plea offer [was] pending."  On January 28, 2020, the State received plea offer negotiation letters from Althof on behalf of Tuimalealiifano to resolve the 2016 Case and 2019 Case.

On March 4, 2020, the State and Tuimalealiifano reached a plea agreement in the 2016 Case under which Tuimalealiifano agreed to plead guilty to the following charges:  Count 1 (amended), Attempted Assault First Degree, in violation of HRS §§ 705-500, 707-710(1) (2014); Count 2, Manslaughter; Count 4, Firearm in Commission of Felony, Attempted Assault; Count 5, Firearm in Commission of Felony, Manslaughter; Count 7, Ownership or Possession.  The State agreed to *nolle prosequi* Counts 3, 6,

8

and 8 at the time of sentencing.[14]  As set forth on the face of a change of plea form (**Form K**), the plea agreement required that Tuimalealiifano would serve mandatory minimum terms of imprisonment of five years on Count 1 and ten years on Count 5. Tuimalealiifano and Althof both signed the Form K and filed it in the Circuit Court.  The attachment to the Form K, however, a February 20, 2020 letter from the deputy prosecuting attorney (**DPA**) to Althof, indicated a mandatory minimum term of ten years in conjunction with Count 2 and did not indicate any mandatory minimum term in conjunction with Count 5.

On March 4, 2020, the State and Tuimalealiifano also reached a plea agreement in the 2019 Case under which Tuimalealiifano agreed to plead guilty to Count 2, Assault Second, with a *nolle prosequi* on Count 1.  The plea agreement in the 2016 Case and plea agreement in the 2019 Case provided that the sentencing would run concurrently between the two cases. Tuimalealiifano and Althof both signed the Form K document in the 2019 Case outlining the plea agreement details and filed it in the Circuit Court.

On the same day, March 4, 2020, the Circuit Court held a change of plea hearing.  The following plea colloquy occurred, in relevant part, addressing Tuimalealiifano's change of pleas:

---

[14]     More accurately, the State intended to *nolle prosequi* Count 8, but as discussed below, the original attachment to the change of plea form indicated that the State would move to *nolle prosequi* Count 7.

THE BAILIFF: Calling Case 4 and 5 on the calendar, Criminal No. 16-1-1545 and 19-1189, State of Hawaiʻi v. Alabanza Tuimalealiifano.

Appearances.

MR. BELL: Good morning, Your Honor. Deputy Prosecuting Attorney Scott Bell for the State in Criminal No. 1PC161001645.

THE COURT: Good morning.

MR. BELL: 45, 1645. 1545?

THE COURT: 1545.

MR. BELL: Thank you.

THE COURT: Yeah.

MR. MURATA: And good morning, Your Honor. Deputy Attorney General Landon Murata on behalf of the State in 1CPC191189.

THE COURT: Good morning.

MR. HIRONAKA: Good morning, Your Honor. Randy Hironaka, Your Honor, making a special appearance with leave of court for Salina Althof on behalf of Alabanza Tuimalealiifano. He's present to my left. He has several family members present in the gallery as well, Your Honor.

THE COURT: All right. Good morning. Good morning, Mr. Tuimalealiifano.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: Okay. So I'd like to take up the change of plea. I have been handed change of plea forms in both cases. So let's take up the 2016 case first.

Mr. Tuimalealiifano, it's the court's understanding you wish to plead guilty to Count 1, attempted assault first degree as amended; Count 2, manslaughter; Count 4, use of firearm in the commission of separate felony; Count 5, use of firearm in the commission of separate felony - manslaughter; and Count 7, prohibited possession of a firearm. Is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Before I accept your plea I need to ask you some questions.

How old are you, sir?

THE DEFENDANT: Thirty-two.

THE COURT: How much education have you had?

10

THE DEFENDANT:  Tenth grade.

THE COURT:  You read and write English?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Have you taken any alcohol, medication, or drugs in the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Last 48 hours?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  This change of plea form, one, two, three, four, five, six, it's a six-page document, and your signature is on page 2.  Is this your signature?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you read and understand this form before you signed it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you discuss with your attorney these offenses:  Attempted assault first, manslaughter, two counts of firearm -- use of firearm in commission of separate felony, and then one count of prohibited possession of a firearm?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you discuss with your attorney the elements of all these offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you go over the police reports and discuss possible defenses?

THE DEFENDANT:  Um, yes, Your Honor.

THE COURT:  Did you discuss the possible penalties for these offenses with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand the maximum penalty for Count 1, attempted assault first, it's a class B, maximum 10 years in prison and a $25,000 fine?

THE DEFENDANT:  Yes, Your Honor.

11

THE COURT: Counts 2, 4, and 5 are all class A felonies. Maximum penalty is 20 years in prison and a $50,000 fine on each count. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Count 7, the firearm possession, prohibited charge is a class B felony, maximum penalty is 10 years in prison and a $25,000 fine. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. In this case, in Count 1 you are looking at a mandatory minimum term of imprisonment of 5 years in Count 1. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

**THE COURT: You understand that a -- okay. Do you understand that on Count 5 you're also looking at a mandatory minimum term of imprisonment, and Count 5 is use of the firearm in commission of a separate felony of manslaughter is a 10 year mandatory minimum? Do you understand that?**

**THE DEFENDANT: Yes, Your Honor.**

THE COURT: Do you understand that a mandatory minimum sentence means that you will have to serve at least that time in prison before you are eligible for parole?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that even if there's a mandatory minimum here that's required by the court for the court to impose, it is ultimately the Parole Board who will establish the mandatory minimum time that you must serve before becoming eligible for parole?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the Parole Board's minimum could be higher than these mandatory minimums that the court must impose?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you discuss with your attorney that restitution is a possible penalty for these offenses?

THE DEFENDANT: Yes.

THE COURT: Do you understand that [sic] restitution is?

12

THE DEFENDANT: Pay back to the State?

THE COURT: Pay back for reasonable and verified losses suffered by a victim or for treatment of the victim's injuries. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the court must order restitution for reasonable and verifiable losses requested by a victim?

THE DEFENDANT: Uh, yes, Your Honor.

THE COURT: Do you understand the court must order restitution if the Crime Victim Compensation Fund made an award to the victim and that you would be ordered to pay restitution to the Crime Victim Fund?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the court cannot waive or set aside the restitution and I cannot convert it to community service?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand?

THE DEFENDANT: Yes.

THE COURT: Okay. Do you understand if there is no determination or agreement on the amount of restitution at this time the court will not be able to determine what the amount is going to be until later?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Knowing the penalties you face, do you still want to plead guilty to these counts?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand you have a right to plead not guilty and go to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You have a right to a jury trial on this case. Did you discuss with your lawyer what a jury trial is?

THE DEFENDANT: Yes, Your Honor.

THE COURT: A jury trial is when 12 members of the community would be chosen to decide your case. Do you understand?

THE DEFENDANT: Yes, Your Honor.

13

THE COURT: All 12 jurors must unanimously agree that the State's proved each count beyond a reasonable doubt before you can be convicted. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You through your attorney may help to question and select the 12 jurors. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you decided you did not want to have a jury trial, then a single judge alone could still hear your case at a trial and decide whether you're guilty or not. This -- we call this a judge trial. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you want to give up your right to a jury trial and a judge trial at this time?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let me now explain the trial rights you give up. You understand that at a trial before you can be convicted the State is required to prove every element of the offense charged between [sic] a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The State will call its witnesses and you through your attorney have the right to cross-examine or question the witnesses. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also have the right to subpoena and call your own witnesses and to take the witness stand on your own behalf and tell your side of what happened. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also have the right not to take the stand and remain silent at your trial. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you choose to remain silent at your trial, the judge or the jury cannot hold your silence against you when deciding your case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty there is no trial and you'll be sentenced without a trial of any kind. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So a guilty plea means you give up the trial. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You understand that once you've entered the guilty pleas you cannot change your mind later and ask for a trial if you don't like the sentence you receive?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand you give up your right to appeal this case when you plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is anyone threatening you, forcing you, or pressuring you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In this case there's a plea agreement, and the court has reviewed the plea agreement and I will bind myself to follow it. The plea agreement is attached to your change of plea form.

So, Mr. Tuimalealiifano, did you go over the terms of the plea agreement with your attorney?

THE DEFENDANT: Uh, yes.

THE COURT: Besides the plea agreement, has anyone made any promises to you in exchange for your plea?

THE DEFENDANT: Yes -- no, Your Honor.

THE COURT: Okay. So no other promises aside from --

THE DEFENDANT: Only --

THE COURT: -- what's in the plea agreement?

THE DEFENDANT: -- what's on the paper. Yes, Your Honor.

15

THE COURT:  Okay.  Have you discussed your pleas fully with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you satisfied with Mr. Hironaka and Miss Althof's advice?

THE DEFENDANT:  Um, yes, Your Honor.

THE COURT:  Do I need to read the immigration advisement, Mr. Hironaka?

MR. HIRONAKA:  That's not necessary.

THE COURT:  Okay.

So, Mr. Tuimalealiifano, on Count 1, this is the amended charge of attempted assault in the first degree, what is your plea, sir?

THE DEFENDANT:  Guilty.

THE COURT:  And it says in Count 1 that you are pleading guilty because on September 24, 2016 in Honolulu, you intentionally engaged in conduct which was a substantial step in a course of conduct intended to have caused serious bodily injury to Sherard, S-H-E-R-A-R-D, Melei, M-E-L-E-I, thereby committing attempted assault in the first agree [sic].  Is this why you are pleading guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In Count 2, manslaughter, what is your plea, sir?

THE DEFENDANT:  Guilty.

THE COURT:  And it says on your form that you are pleading guilty because for Count 2, same date, September 24, 2016 in Honolulu, you recklessly caused the death of Tara Tevaga, T-E-V-A-G-A, committing the offense of manslaughter.  Is this why you're pleading guilty to Count 2?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What is your plea to Count 4, sir?

THE DEFENDANT:  Guilty.

THE COURT:  Okay.  And Count 4 is use of a firearm in the commission of a separate felony of attempted assault first degree, and you're pleading guilty to this count?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And it says here you're pleading guilty because on September 24, 2016 in Honolulu you

16

knowingly carried on your person or had within your immediate control or did intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, attempted assault in the first degree, whether the firearm was loaded or not or operable or not, there by committing the offense of carrying or use of firearm in the commission of a separate felony. Is this why you are pleading guilty to Count 4?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In Count 5, use of firearm in the commission of a separate felony of manslaughter, what is your plea, sir?

THE DEFENDANT: Guilty.

THE COURT: Okay. It says here in Count 5 you're pleading guilty because September 24, 2016 in Honolulu you knowingly carried on your person or you had within your immediate control or you did intentionally use or threaten to use a firearm while engaged in the commission of a separate felony of manslaughter, whether the firearm was loaded or not or operable or not, thereby committing the offense of carrying or use of firearm in the commission of a separate felony. Is this why you're pleading guilty to Count 5?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In Count 7, ownership or possession prohibited of any firearm or ammunition by person convicted of certain crimes. What is your plea to Count 7, sir?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: And it says here in Count 7, you're pleading guilty --

The record reflect defendant's conferring with counsel.

MR. HIRONAKA: Your Honor, I'm sorry. May I --

THE COURT: You wanna pass --

MR. HIRONAKA: -- confer with him for just a couple minutes, and then we --

THE COURT: Sure.

Okay. So we're gonna pass this case.

MR. HIRONAKA: Thank you, Your Honor.

(Case passed at 9:44 a.m.)

(Case recalled at 9:49 a.m.)

17

THE COURT:  Okay.  We are back on record in Mr. Tuimalealiifano's case.

So, Mr. Tuimalealiifano, you needed some time to talk to Mr. Hironaka about any other questions or issues you had?

THE DEFENDANT:  Um -- yes.

THE COURT:  Okay.  Do you need more time --

THE DEFENDANT:  No.

THE COURT:  -- or are you okay to keep going?

THE DEFENDANT:  Yeah, I'm good.  I'm good.  Yes, Your Honor.

THE COURT:  So when we left off, we were on Count 7, ownership or possession prohibited of a firearm or ammunition by a person convicted of certain crimes.  What is your plea to Count 7, sir?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  And it says on your form that you're pleading guilty because on September 24, 2016 in Honolulu, being a person who was convicted in the State of Hawaiʻi of having committed a felony, with knowledge of reckless disregard of the substantial and unjustifiable risk that you had been so convicted, that you did intentionally or knowingly own, possess, or control an object with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was a firearm or ammunition, thereby committing the offense of ownership or possession prohibited of any firearm or ammunition by a person convicted of certain crimes. Is this why you're pleading guilty to Count 7?

THE DEFENDANT:  Yes, Your Honor.

**THE COURT:  The court finds that defendant has knowingly, voluntarily, and intelligently entered his pleas with an understanding of the nature of the charges.  The pleas in Counts 1, 2, 4, 5, and 7 are accepted and he is therefore adjudged guilty as charged in those counts.**

**And looking at the plea agreement, the court's understanding is the remaining counts will be nolle prosequied, Counts 3, 6, and 7, at time of sentencing. Is that right?**

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  State's gonna file a motion at --

MR. BELL:  Yes, --

18

THE COURT: -- time of sentencing?

MR. BELL: -- at the time of sentencing. Thank you, Your Honor.

MR. HIRONAKA: And, Your Honor, just -- I'm sorry, just a quick clarification. I think you said that he's adjudged guilty as charged in those counts, but I --

THE COURT: Oh, that's right.

MR. HIRONAKA: -- I believe some of them have been amended.

THE COURT: Yes. So he's --

MR. BELL: That would be Count 1, Your Honor, --

THE COURT: Okay.

MR. BELL: -- the amended charge.

**THE COURT: And in Count 1, Mr. Tuimalealiifano, I misspoke. You're -- the court's gonna find you guilty of the amended charge, attempted assault first degree. Is that your unders -- is that what your understanding is also?**

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions, sir, about what we discussed in the 2016 case?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. So I'm gonna return your form back to you for your acknowledgment and signature.

MR. HIRONAKA: And, Your Honor, if the record could reflect that Mr. Tuimalealiifano has signed the acknowledgment.

THE COURT: Yes. And the court has received the form back.

And, Mr. Tuimalealiifano, I need to go over the same kinds of questions with you in case 2019. So we're gonna do the same process in that case. Okay?

And in this case I've been handed a form. It says you are pleading guilty to Count 2 only and Count 1 is going to be nolle prosequied or -- at time of sentencing. Is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Before I accept your plea in this case, I need to ask you the same questions.

19

How old are you?

THE DEFENDANT:  Thirty-three.

THE COURT:  How much education have you had?

THE DEFENDANT:  Tenth grade.

THE COURT:  You read and write English?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You took any alcohol, medication, or drugs in the last 48 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mind clear today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  This change of plea form, this is your signature on the second page of this form?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You read and understood this form before you signed it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You discussed the assault second degree offense with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand the elements of the offense?

THE DEFENDANT:  Yes.

THE COURT:  You went over police reports and discussed possible defenses?

THE DEFENDANT:  Yes.

THE COURT:  You understand the possible penalties for this offense?

THE DEFENDANT:  Yes.

THE COURT:  You under the -- you understand the maximum penalty for this one as a class C felony is five years in prison and a $10,000 fine?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  This one also, did you discuss with your attorney that restitution is a possible penalty for this assault?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand what restitution is?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand the court must order restitution for reasonable and verifiable losses requested by a victim?

THE DEFENDANT:  Yes.

THE COURT:  You understand the court must order restitution if the Crime Victim Compensation Fund made an award to the victim and that you would be ordered to pay restitution to the Crime Victim Fund?

THE DEFENDANT:  Yes, that is correct.

THE COURT:  You understand the court cannot waive or set aside restitution and I cannot convert it to community service?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand if there's no determination or agreement on the amount of restitution at this time, the court will not be able to determine what the amount is going to be until later?

THE DEFENDANT:  Yes.

THE COURT:  Knowing the penalties you face, do you still want to plead guilty to this charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand you have a right to plead not guilty and go to trial?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You have a right to a jury trial on this case.  Did you discuss with your lawyer what the jury trial is?

THE DEFENDANT:  Yes.

THE COURT:  A jury trial is when 12 members of the community would decide your case and all 12 jurors have to unanimously agree that the State's proved the case before you can be convicted.  You understand?

THE DEFENDANT:  Yes.

THE COURT:  You through your attorney may help to question and select the 12 jurors.  You understand that?

THE DEFENDANT:  Yes.

THE COURT: If it is -- if you decided you did not want to have a jury trial, a single judge alone would hear your case and decide whether you're guilty or not. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you want to give up your right to a jury trial on this case at this time?

THE DEFENDANT: Yes.

THE COURT: And you want to give up your right to a judge trial also?

THE DEFENDANT: Yes.

THE COURT: And when you give up your right to a trial, you give up your right to have the State prove every element of the charged offenses beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At a trial the State will call its witnesses and you through your attorney have the right to cross-examine or question the witnesses. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You also have the right to subpoena, call your own witnesses and to take the witness stand on your own behalf. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You also have the right not to take the stand and remain silent. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you remain silent at a trial, the judge or the jury cannot hold your silence against you when deciding your case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty, there is not [sic] trial and you give that up. Do you understand?

THE DEFENDANT: Yes.

THE COURT: And you will be sentenced without a trial of any kind when you plead guilty. Do you understand?

THE DEFENDANT: Yes.

22

THE COURT: You understand that once you plead guilty, you cannot change your mind later and ask for a trial if you don't like the sentence you received?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand you give up your right to appeal this case when you plead guilty?

THE DEFENDANT: Yes.

THE COURT: Is anyone threatening you, forcing you, or pressuring you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you pleading of your own free will?

THE DEFENDANT: Yes.

THE COURT: Do you understand that -- in this case there's a plea agreement, and the court has agreed to follow it. A copy of your agreement is attached to this change of plea form. Did you go over the terms of this agreement with your attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Besides the plea agreement, did anyone make you any promises in exchange for your guilty plea?

THE DEFENDANT: Besides the paper, no, Your Honor.

THE COURT: Okay. Have you discussed your plea fully with your attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with his advice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with Miss Althof's advice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And no need to read the immigration, right?

MR. HIRONAKA: No, Your Honor.

THE COURT: Okay. Mr. Tuimalealiifano, to Count 2, assault in the second degree, what is your plea, sir?

THE DEFENDANT: Guilty.

23

THE COURT: And in this case it says you're pleading guilty because on April 11, 2019 in Honolulu you intentionally, knowingly, or recklessly caused substantial bodily injury to Ross Taylor. Is this why you're pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: This court finds that the defendant has knowingly, voluntarily, and intelligently entered his plea with an understanding of the nature of the charge. The plea to Count 2 is accepted and he's therefore adjudged guilty as charged in Count 2.

Do you have any questions, sir, about what we have just discussed?

THE DEFENDANT: No, Your Honor.

THE COURT: I'm gonna return your form back to you for your acknowledgment and signature.

MR. HIRONAKA: And then, Your Honor, if the record could reflect that Mr. Tuimalealiifano has signed the acknowledgment.

THE COURT: Yes.

MR. HIRONAKA: And I am returning the forms to the clerk.

THE COURT: Okay. And the court has received the forms.

On March 16, 2020, a Stipulation to Amend the Change of Plea Form Filed on March 4, 2020 was filed (**Stipulation**) in the 2016 Case. The Stipulation removed the February 20, 2020 letter attached to the guilty plea form and replaced it with a March 4, 2020 letter, which was initialed by Althof and Tuimalealiifano. The March 4, 2020 letter indicated that the State would move to *nolle prosequi* Count 8, rather than Count 7. No other change was made; like the February 20, 2020 letter, the March 4, 2020 letter indicated that Tuimalealiifano would be sentenced to a ten year mandatory minimum sentence on Count 2 and did not indicate any mandatory minimum sentence on Count 5.

24

Subsequently on June 19, 2020, Althof filed a Motion to Withdraw as Counsel in both cases, in part because Tuimalealiifano wanted to withdraw his plea agreement, and she felt she could no longer represent him effectively based on his reasoning. Specifically, Althof stated that Tuimalealiifano wanted to withdraw his guilty pleas because "he did not understand fully the terms and conditions of the plea agreement, that I [Althof] was not present for his change of plea, and that he felt pressured to plead guilty with Mr. Hironaka."

Subsequently, Emmanuel Guerrero (**Guerrero**) was appointed as Tuimalealiifano's defense counsel. On July 30, 2020, Tuimalealiifano, in both the 2016 Case and 2019 Case, filed motions to withdraw his guilty pleas on the grounds that he did not knowingly, voluntarily, and intelligently enter his guilty pleas. In support, Tuimalealiifano asserted the following, in relevant part:

> A. At the change of plea, the Defendant expressed surprise to his counsel that the plea agreement included a mandatory 10 year minimum, and that he was of the belief that there would be no such mandatory minimum. (Transcripts of the Change of Plea proceedings is attached as Exhibit "B").
>
> B. Further, Defendant believed that he would be entering "no-contest" as oppose to "guilty" pleas as part of the agreement.
>
> C. Further, although SALINA KANAI ALTHOF was Defendant's counsel at that time and had negotiated the plea agreement with the State, at the change of plea, RANDALL HIRONOKA [sic] appeared in place of Ms. Althof on behalf of Defendant.
>
> D. According to the Defendant, he conferred with Mr. Hironaka regarding his concerns of the differences in his understanding of the plea agreement as he was advised and informed by Ms. Althof, with that being discussed in Court.

25

E.   Defendant was assured by Mr. Hironoka [sic] that the pela [sic] agreement was a "good deal" and to continue on with the change of plea.

The State filed a Memorandum in Opposition to Defendant's Motion to Withdraw Guilty Pleas (**Opposition Memorandum**), attaching a declaration from Althof, which provided in relevant part:

15.   Defendant expressed at our first meeting on September 26, 2019 that he did not wish to take either case to trial and asked me to submit a plea offer.

. . . .

18.   On November 18, 2019, I spoke with Deputy Prosecuting Attorney Scott Bell regarding the terms of a potential plea agreement in Case No. 1CPC-19-0001189, based upon my knowledge that Defendant wished to resolve the cases.

. . . .

22.   On or about January 27, 2020, I had a discussion with Defendant at Circuit Court cellblock prior to a trial call.

23.   At that point, we had not yet received a response from the State on our plea offer.

24.   Defendant and I discussed the terms of the outstanding plea offer, and Defendant requested that I submit a revised plea offer.  After discussion of that revised plea offer, I agreed to do so.

. . . .

29.   On or about February 20, 2020, I received a counteroffer from DPA Bell.  While it differed somewhat from Defendant's revised plea offer on January 28, 2020, it called for essentially the same result - an indeterminate 20-year term with a mandatory minimum on Count 2 of ten (10) years.

30.   On or about February 21, 2020, I had a phone call with DAG Murata confirming verbally that a sentence that would be concurrent to DAG Bell's case was approved.

31.   On or about February 25, 2020, I mailed a copy of the counteroffer to Defendant.

32.   On or about February 28, 2020, I met Defendant at OCCC.  We went over the written counteroffer from DPA Bell in detail.  I explained the terms of the plea agreement. Defendant agreed that he was willing to accept the counteroffer.

26

33. On or about March 3, 2020, I met with Defendant again at OCCC. This time, I had change of plea (COP) forms prepared on both cases - a guilty plea form for Case No. 1PC161001545 and a no contest plea form for Case No. 1CPC-19-0001189. The COP hearing had been scheduled for the following day, March 4, 2020.

. . . .

40. On the morning of March 4, 2020, prior to the scheduled COP hearing, I received an email from DAG Murata indicating that his understanding was that the plea agreement required Defendant to plead "guilty" as opposed to "no contest." He emailed me a letter to clarify the plea agreement.

41. The letter clarified that Defendant could not plead no contest and set out other terms which did not substantively change the sentence that Defendant was expecting.

42. I corrected the COP form on Case No. 1CPC-19-0001189 to reflect a "guilty" plea and to attach DAG Murata's letter to it.

43. I explained to Hironaka the change and asked him to explain to Defendant about the change from "guilty" to "no contest" and that he needed to execute the amended COP form. I told Hironaka that if Defendant had any hesitation about going forward without me for any reason to continue the hearing.

The State also attached a declaration from Hironaka, which provided in relevant part:

10. On or about March 3, 2020, Ms. Althof requested my possible assistance with covering a March 4, 2020 change of plea hearing for Mr. Alabanza Tuimalealiifano, who had two cases –- 1PC160001545 and 1CPC-19-0001189.

. . . .

15. On either March 3, 2020, or the morning of March 4, 2020, Ms. Althof provided me with the change of plea form (with an attached plea agreement) for 1PC161001545.

   a. That change of plea form was already signed once by Mr. Tuimalealiifano.

   b. The certificate of counsel on that change of plea form was already signed by Ms. Althof.

   c. Ms. Althof had already reviewed the change of plea form and the attached plea agreement with Mr. Tuimalealiifano on March 3, 2020.

27

16. On the morning of March 4, 2020, Ms. Althof provided me with a change of plea form (with an attached plea agreement) for 1CPC-19-0001189.

    a. I recall Ms. Althof informing me that an issue came up and Mr. Tuimalealiifano could no longer plead "no contest" in this case.

    b. As such, Ms. Althof provided me with a change of plea form (with an attached plea agreement) that had not been executed by Mr. Tuimalealiifano.

    c. The certificate of counsel was already signed by Ms. Althof as an indication that she reviewed the entire document with Mr. Tuimalealiifano, with two exceptions:

        (1) The box indicating a "guilty" plea was checked; and

        (2) A factual basis for Mr. Tuimalealiifano's plea was provided in paragraph 7 of the form.

. . . .

25. I spoke with Mr. Tuimalealiifano about the change of plea forms and about why he was at court.

26. Mr. Tuimalealiifano seemed to understand the forms, the attached plea agreements, and the purpose for being at court that day.

. . . .

28. I recall explaining to Mr. Tuimalealiifano that the plea agreement in 1CPC-19-0001189 now required him to plead "guilty," as opposed to "no contest."

. . . .

35. I do not recall Mr. Tuimalealiifano expressing any concern nor hesitation about having to plead "guilty" in 1CPC-19-0001189.

. . . .

37. During the change of plea hearing, at approximately 9:44 a.m., Mr. Tuimalealiifano wanted to speak privately with me.

38. I asked Judge Nakasone for a brief recess so that I could confer with Mr. Tuimalealiifano.

39. Our request was granted . . . .

40. During the recess, I recall Mr. Tuimalealiifano expressing a concern about whether the plea agreements were the "best deal" he could get from the government.

41. I recall telling Mr. Tuimalealiifano that I did not know a lot about the facts and circumstances of his

28

cases, so whether he wanted to take the deals being offered by the government was up to him.

42. I do not recall him expressing a concern about a ten-year mandatory minimum in 1PC1610001545.

43. I do not recall him expressing a concern about having to plead "guilty," rather than "no contest," in 1CPC-19-0001189.

On October 5, 2020, the Circuit Court held a hearing on Tuimalealiifano's Motions to Withdraw Guilty Pleas. At the hearing, the Circuit Court considered all of the evidence that Tuimalealiifano put forth in his motion including the Form Ks, plea negotiation letters, and transcript from the change of plea hearing on March 4, 2020. The Circuit Court also considered the State's evidence, including the declarations of Althof and Hironaka, put forth in the Opposition Memorandum. At the hearing, Mr. Guerrero argued, in relevant part:

> MR. GUERRERO: Your honor, what I informed Mr. Tuimalealiifano going over the form is that if he was called to testify -- if he were to testify, he would testify that at the change of plea proceedings he was of the good faith belief, he was of the belief that he was to enter pleas of no contest as opposed to guilty, that he was not facing a mandatory minimum term of 10 years on the cases, in 1545, and that he -- he was of the belief that it was going to be an open 20-year term. That is what he would testify to. And he would further testify that based upon review of the terms it does indicate that, I believe at page 14 of the transcript, well, that the court had to take a break to allow him to confer with the substitute defense attorney regarding those issues.

(Format altered).

The Circuit Court found that the testimonies in the declarations of Althof and Hironaka were credible, Tuimalealiifano's testimony not credible, and that Tuimalealiifano had not met the standard of providing a fair and

29

just reason for withdrawal of his pleas. Moreover, the Circuit Court stated that even if Tuimalealiifano had met his burden of providing a fair and just reason for withdrawal in the 2016 Case, permitting Tuimalealiifano to withdraw his plea in that case would cause substantial detriment to the government. Subsequently, the Circuit Court sentenced Tuimalealiifano in accordance with the plea agreements.

On October 8, 2020, the Circuit Court entered the FOFs/COLs in the 2019 Case. On appeal, Tuimalealiifano challenges the following FOFs as erroneous:

> 27. Based on the Court's questioning of Defendant, the record is clear that Defendant understood the nature of the charge to which he intended to plead and the maximum penalties that may be imposed by law, including the possibility of restitution.
>
> . . . .
>
> 34. The record is also clear that Defendant understood that he had a right to plead not guilty, to persist in that plea and go to trial, and that by pleading guilty or no contest he would be giving up his rights.
>
> . . . .
>
> 44. Defendant confirmed that he had fully discussed the plea with his attorney, that he was satisfied with Mr. Hironaka and Ms. Kanai's advice, and that there were no promises made in exchange for his plea besides the Plea Agreement.
>
> . . . .
>
> 57. Based on the Court's review of all the declarations and exhibits submitted, Defendant's allegation that he thought he would be entering a plea of no contest as opposed to guilty in the Instant Case is not credible.
>
> 58. Similarly, Defendant's allegation that he was not aware of the applicable mandatory minimum in Case No. 1PC161001545 is not credible.
>
> 59. Finally, Defendant's allegation that the information and advice he received from defense counsel regarding the plea agreement in Instant Case differed from what was entered on the record is not credible.

On October 10, 2020, the Circuit Court entered its FOFs/COLs in the 2016 Case. On appeal, Tuimalealiifano challenges the following FOFs erroneous:

> 42. When the hearing resumed, Defendant confirmed that he had sufficient time for Mr. Hironaka to answer his questions.
>
> . . . .
>
> 46. The court finds that Ms. Kanai and Mr. Hironaka's explanation of the plea agreement in Case No. 1PC161001545 is consistent with what transpired on the record at the March 4, 2020 change of plea hearing.
>
> . . . .
>
> 49. On July 30, 2020, Defendant, through counsel, filed "Defendant's Motion to Withdraw Guilty Pleas" (motion). The motion argues that there are three reasons to justify the withdrawal of Defendant's guilty plea. They are: (1) Defendant was not advised that the plea agreement called for a 10-year mandatory minimum term of imprisonment; (2) Defendant expected to plead "no contest" and not "guilty" as part of the plea agreement; and (3) his trial counsel's advice and information as to the settlement agreement was different from that entered on the record. For the reasons set forth below, Defendant's arguments are without legal merit and the court should deny the motion in its entirety.
>
> 50. The court finds Ms. Kanai and Mr. Hironaka to be credible.
>
> 51. The court finds that Defendant is not credible.

Tuimalealiifano also challenges the following COLs from the Circuit Court's FOFs/COLs in the 2016 Case:

> 7. The record on the motion to withdraw guilty pleas is complete. Defendant fails to demonstrate by a preponderance of the evidence that there are fair and just reasons to support the withdrawal of his guilty pleas.
>
> 8. The court complied with the colloquy requirements of HRPP Rule 11.

31

        9.    Defendant knowingly, intelligently, and voluntarily
              waived his specific constitutional rights upon
              pleading guilty.

## II.   POINTS OF ERROR

        In each of these consolidated appeals, Tuimalealiifano
raises a single point of error, with subpoints, contending that
the Circuit Court abused its discretion in not allowing him to
withdraw his guilty pleas and erred when it:  (1) entered
multiple FOFs suggesting that he knowingly, intelligently, and
voluntarily entered his guilty pleas; and (2) found his testimony
not credible.

## III. APPLICABLE STANDARDS OF REVIEW

         "A trial court's denial of a motion to withdraw a plea
made prior to sentencing is reviewed for abuse of discretion."
State v. Guity, 144 Hawaiʻi 557, 560-61, 445 P.3d 138, 141-42
(2019).  A trial court abuses its discretion when it "has clearly
exceeded the bounds of reason or has disregarded rules or
principles of law or practice to the substantial detriment of a
party litigant."  State v. Merino, 81 Hawaiʻi 198, 211, 915 P.2d
672, 685 (1996) (quoting State v. Gomes, 79 Hawaiʻi 32, 36, 897
P.2d 959, 963 (1995)).  However, where an appellate court's
review is based "solely upon the constitutional inquiry" of a
defendant's claim that a plea was not knowingly, intelligently,
or voluntarily entered, an appellate court will review the claim
"*de novo*, *i.e.*, according to the right/wrong standard, based upon
an examination of the entire record."  State v. Topasna, 94

32

Hawaiʻi 444, 452, 16 P.3d 849, 857 (App. 2000) (citation omitted).

"[A] trial court's FOFs are subject to the clearly erroneous standard of review."  State v. Hicks, 113 Hawaiʻi 60, 70, 148 P.3d 493, 503 (2006) (quoting State v. St. Clair, 101 Hawaiʻi 280, 287, 67 P.3d 779, 786 (2003)).  A trial court's FOF "is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed."  Merino, 81 Hawaiʻi at 219, 915 P.2d at 693 (quoting Tachibana v. State, 79 Hawaiʻi 226, 231, 900 P.2d 1293, 1298 (1995)).  "Moreover, an appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge."  Hicks, 113 Hawaiʻi at 70, 148 P.3d at 503 (quoting St. Clair, 101 Hawaiʻi at 287, 67 P.3d at 786); see also Topasna, 94 Hawaiʻi at 461, 16 P.3d at 866 ("To the extent the findings were the court's judgment as to the credibility of Topasna's testimony about his state of mind, we cannot disturb them.").

Conclusions of law are "not binding upon an appellate court."  Merino, 81 Hawaiʻi at 219, 915 P.2d at 693 (quoting State v. Wallace, 80 Hawaiʻi 382, 391, 910 P.2d 695, 704 (1996)).  COLs are subject to the right/wrong standard, and "[t]hus, a COL that is supported by the trial court's FOF and that reflects an

application of the correct rule of law will not be overturned."
Id.

IV.  DISCUSSION

Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 32(d) governs plea withdrawals, but it does not provide a standard for defendants withdrawing pleas prior to sentencing.[15]  State v. Pedro, 149 Hawaiʻi 256, ___, 488 P.3d 1235, 1249 (2021). Instead, the Hawaiʻi Supreme Court has articulated the standard, providing that although "[a] defendant does not have an absolute right to withdraw his guilty plea," when "the motion is presented to the trial court before the imposition of sentence, a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice."  State v Jim, 58 Haw. 574, 575-576, 574 P.2d 521, 522-23 (1978); see also Pedro, 149 Hawaiʻi at __, 488 P.3d at 1249.

In Pedro, the supreme court explained that "fair and just reason" is a flexible and permissive standard that requires

_____

[15]    HRPP Rule 32(d) provides:

**(d) Withdrawal of Plea**.  A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea.  At any later time, a defendant seeking to withdraw a plea of guilty or nolo contendere may do so only by petition pursuant to Rule 40 of these rules and the court shall not set aside such a plea unless doing so is necessary to correct manifest injustice.

34

an examination of "the totality of the circumstances to determine whether there was <u>any</u> fair and just reason for [a defendant's] plea withdrawal." <u>Pedro</u>, 149 Hawaiʻi at ___, 488 P.3d at 1250 (emphasis in original).  The court reaffirmed that "[t]he defendant has the burden of establishing plausible and legitimate grounds for the withdrawal" in conjunction with this framework. <u>Id.</u> at ___, 488 P.3d at 1249 (citing <u>State v. Costa</u>, 64 Haw. 564, 565, 644 P.2d 1329, 1331 (1982)).  The supreme court in <u>Pedro</u> concluded that the trial court did not err either in concluding that Pedro's pleas were knowing and voluntary or in finding that "new evidence" did not justify the plea withdrawal; however, the trial court nevertheless abused its discretion by ending its inquiry there and failing to consider "whether there were <u>any</u> circumstances constituting a 'fair and just' reason for the pre-sentence withdrawal of Pedro's pleas." <u>Id.</u> at ___, 488 P.3 at 1253.

In order to "prospectively facilitate" the analysis of whether there is a fair and just reason for the withdrawal of a plea before sentencing, absent manifest injustice, the supreme court in <u>Pedro</u> introduced a non-exclusive, five-factor test:

> Courts evaluating an HRPP Rule 32(d) motion to withdraw a knowing and voluntary plea before sentencing should consider:  (1) whether the defendant has asserted and maintained innocence; (2) the timing of the request for the plea withdrawal and the reasons for any delay; (3) the circumstances underlying the plea; (4) the defendant's nature and background; and (5) the potential prejudice to the prosecution caused by reliance on the plea.

<u>Pedro</u>, 149 Hawaiʻi at ___, 488 P.3d at 1254 (footnote omitted).

35

The threshold question in this case is whether Tuimalealiifano knowingly, intelligently, and voluntarily entered his guilty pleas, as that is his sole argument for asserting that the Circuit Court abused its discretion in declining to allow him to withdraw his pleas.  HRPP Rule 11 governs pleas and requires trial courts to follow particular procedures to ensure that a defendant is knowingly, intelligently, and voluntarily entering a plea.  In addition, the supreme court has provided that:

> It is well-recognized that a guilty plea "in itself is a conviction and a simultaneous waiver of several important constitutional guarantees [,]" namely, the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers, and, thus, the waiver of these guarantees "is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences." . . .  In determining the voluntariness of a defendant's proffered guilty plea, the trial court should make an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences.

State v Solomon, 107 Hawaiʻi 117, 127, 111 P.3d 12, 22 (internal citations and quotation marks omitted).

An on-the-record plea colloquy is generally constitutionally sufficient and ensures a defendant knowingly, intelligently, and voluntarily enters a plea when it:  (1) informs the defendant that in "pleading guilty, he [is] waiving his privilege against self-incrimination, the right to a trial by jury, and the right to confront his accuser;" and (2) adheres to HRPP Rule 11 requirements.  Id. at 128, 111 P.3d at 23 (finding colloquy insufficient to obtain knowing and voluntary waiver when it failed to inform defendant what specific constitutional rights

36

he gave up in pleading guilty); Topasna, 94 Hawaiʻi at 454, 16 P.3d at 859 (analyzing HRPP Rule 11 mandates and waiver of important constitutional rights separately).  A trial court may also be required to "ask follow up questions" if a "salient fact" exists, which notifies a trial court that the defendant does not understand the consequences of the plea.  State v. Krstoth, 138 Hawaiʻi 268, 276, 378 P.3d 984, 992 (2016) (citation omitted).

Here, Tuimalealiifano does not argue that the change of plea colloquy failed to inform him, for example, that in pleading guilty, he waived his privilege against self-incrimination, right to a jury trial, and right to confront his accuser.  Indeed, the record establishes that the plea colloquy sufficiently informed Tuimalealiifano, *inter alia*, that in pleading guilty, he would waive the right to a jury trial, his privilege against self-incrimination, and the right to confront his accusers.  The Circuit Court clearly explained in detail, *inter alia*, that a jury trial consisted of 12 members from the community; that Tuimalealiifano, through his attorney, could question and help select the 12 jurors; all 12 jurors must unanimously agree that the State proved each count beyond a reasonable doubt; and even if Tuimalealiifano chose not to have a jury trial, he could still have a judge trial.  Tuimalealiifano expressly confirmed, with responses appropriate to the particular rights being explained, that he understood that in pleading guilty, he waived each of these rights.  Cf. Krstoth, 138 Hawaiʻi

37

at 275-76, 378 P.3d at 991-92 (several omissions in colloquy, combined with elicitation of one-word responses, and language barrier, contributed to a totality of circumstances supporting the supreme court's conclusion that the record did not establish a knowing, intelligent, and voluntary waiver).

Here, in arguing that he did not knowingly, voluntarily, and intelligently change his pleas, Tuimalealiifano points to the totality of the circumstances regarding his change of plea, particularly: (1) the severity of the charges; (2) the one-time representation by a different attorney during the change of plea hearing regarding the "complicated global plea agreement;" and (3) the Circuit Court's limited inquiry after the court paused the change of plea proceedings to allow Tuimalealiifano to confer with counsel.

The severity of charges is certainly part of the totality of the circumstances, but there is no argument or indication in the record that Tuimalealiifano did not fully understand the charges.

While not conclusive of constitutional validity, a signed Form K plea agreement may tend to support that a defendant knowingly, voluntarily, and intelligently pled to serious charges, such as the ones in this case. See Pedro, 149 Hawaiʻi at ___, 488 P.3d at 1251. Here, however, the Form K was itself inconsistent and confusing. On its face, the Form K stated that Tuimalealiifano was subject to a mandatory minimum term of ten

years on Count 5, whereas the attached February 20, 2020 letter detailing the plea agreement (as well as the subsequent March 4, 2020 letter) stated that Tuimalealiifano was subject to a mandatory minimum term of ten years on Count 2.

Notably, it appears that a mandatory minimum term under HRS § 706-660.1 (2014) could not be imposed as to Count 5, which charged Tuimalealiifano with Firearm in Commission of Felony, Manslaughter, in violation of HRS § 134-21. See, e.g., State v. Ambrosio, 72 Haw. 496, 824 P.2d 107 (1992); and State v. Ancheta, No. 29039, 2009 WL 3776408, *8 (Haw. App. Nov. 9, 2009) (mem. op.). In Ambrosio, 72 Haw. at 496-97, 824 P.2d at 107-08, the Defendant pled no contest under HRS § 134-6(a) and was sentenced to a seven year mandatory minimum sentence pursuant to HRS § 706-660.1(a)(2). The supreme court held that the trial court had "improperly applied the statute when sentencing appellant for the felony of using a firearm in the commission of the kidnapping." Ambrosio 72 Haw. at 498, 824 P.2d at 108. The supreme court reasoned:

> The language of the above statute [referring to HRS § 706-660.1(a)(2)] is clear and unambiguous. The enhanced sentencing applies to the conviction for the felony in which the firearm was used. In this case, it was the kidnapping.
>
> The legislature has chosen to make the use of a firearm in the commission of a felony the basis for enhanced sentencing for that felony, and it has also chosen to make such use a separate felony, but it clearly has not chosen to impose two mandatory minimum sentences for one use of a gun.

Id. at 497-98, 824 P.2d at 107-08.

39

In **Ancheta**, the defendant was charged for Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony, in violation of HRS § 134-6(a) and (e) (Supp. 2005) and sentenced to twenty years with a mandatory minimum term of ten years pursuant to HRS § 706-660.1 (1993). **Ancheta**, 2009 WL 3776408 at *2. The original complaint in that case alleged that the defendant

> did knowingly carry on his person or have within his immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony, in violation of Sections 134-6(a) and (e) of the Hawaiʻi Revised Statutes, and the separate felony is Burglary in the First Degree . . . .

This court went on to state:

> However, effective May 2, 2006, HRS § 134-6 was repealed in its entirety in Act 66 of 2006. See 2006 Haw. Sess. Laws Act 66, § 6 at 110, § 10 at 110. As part of the re-working of Chapter 134, the Legislature added various new sections, including § 134-A "Carrying or use of firearm in the commission of a separate felony; penalty," which was codified as HRS § 134-21. See 2006 Haw. Sess. Laws Act 66 § 1 at 105. HRS § 134-21(a) (Supp. 2006) is substantively identical to HRS § 134-6(a)(repealed). . . .

Id. at *3 (footnote omitted). Relying primarily on **Ambrosio**, this court vacated the ten-year mandatory minimum and concluded that "HRS § 706-660.1(1) is inapplicable to Use of Firearm in the Commission of Felony convictions as a matter of law." Id. at *8.

Although there have been some modifications to HRS § 706-660.1, it remains essentially unchanged with respect to the issue of not imposing a mandatory minimum sentence for a Firearm in Commission of Felony violation, as charged in Count 5.

Accordingly, Tuimalealiifano could not be sentenced to a mandatory minimum term with respect to Count 5, as reflected on the face of Form K.

The error in the Form K was not corrected, and the error was repeated in the Circuit Court's colloquy, which did not advise Tuimalealiifano that he was subject to a mandatory minimum term of ten years with respect to Count 2, but instead asked him whether he understood that "on Count 5 you're also looking at a mandatory minimum term of imprisonment, and Count 5 is use of the firearm in commission of a separate felony of manslaughter is a 10 year mandatory minimum?  Do you understand that?"  Tuimalealiifano answered, "Yes, Your Honor."  Tuimalealiifano did not raise this specific infirmity in arguing that his guilty plea was not entered knowingly, intelligently and voluntarily, but neither the lawyers nor the court recognized the mistake, and Tuimalealiifano argued that he was surprised by the ten-year mandatory minimum term.  In any case, the Circuit Court was plainly wrong in advising Tuimalealiifano that Count 5 was subject to a mandatory minimum term and his "understanding" of that advisement was at best ill-informed and confused.  The Circuit Court failed to instead advise him that Count 2 was subject to a mandatory minimum term, and it is difficult to conclude that a plea based on an erroneous and confusing Form K,

41

as well as an erroneous advisement in the colloquy, was entered knowingly and intelligently.[16]

As part of the colloquy, the Circuit Court confirmed Tuimalealiifano's age, limited educational background, ability to read and write English, and clear, sound mind. The Circuit Court's plea colloquy systematically addressed each of the charges Tuimalealiifano was pleading guilty to and the factual basis for that plea. When Tuimalealiifano hesitated, to confer with counsel, the court agreed to break the proceedings to allow consultation with substitute counsel and, when the proceedings resumed, the court inquired whether Tuimalealiifano needed "more time" and he said no. As discussed above, the Circuit Court colloquied Tuimalealiifano about whether he had discussed the penalties for the offenses with counsel and then discussed with Tuimalealiifano the maximum penalties, the mandatory minimum terms, the role of the Parole Board in ultimately establishing the minimum time he would serve, and restitution, albeit with errors as to the consequences of pleading guilty as to Counts 2 and 5.

In addition, after accepting Tuimalealiifano's guilty plea as to Count 7, the court had to be corrected as to its

---

[16]    On October 20, 2021, this court entered an order providing the parties an opportunity to file supplemental briefs on this issue, as well as other issues described in the order. Through (substituted) appellate counsel, Tuimalealiifano argued that the Form K error, along with the fact that his counsel of record was not present on the day of his plea, along with the related errors in the court's plea colloquy, all weigh in favor of allowing him to withdraw his guilty pleas. The State did not file a supplemental brief in response to the October 20, 2021 order.

summary including that Tuimalealiifano was adjudged "guilty as charged" to Count 1, when he in fact pled guilty to a lesser charge.  The Circuit Court further said, *inter alia*, that the charges in Counts 3, 6, and 7, would be *nolle prosequied*; Tuimalealiifano responded "Yes, Your Honor" when asked if that was right, even though he had just pled guilty to Count 7.  While that error was corrected in the Stipulation, that exchange reflects at least some confusion on Tuimalealiifano's part and perhaps a lack of attention to the details of the pleas on the part of the court and counsel.  While none of these errors ultimately changed the result of the pleas, they bring into question Tuimalealiifano's understanding of the specifics of the guilty pleas, notwithstanding his responses.

Tuimalealiifano asserts that Hironaka's appearance with him at the change of plea hearing, in lieu of Althof, should have weighed heavily in favor of allowing Tuimalealiifano to withdraw his plea.  The record supports the Circuit Court's findings concerning Tuimalealiifano's directions to Althof to resolve the cases through plea negotiations and her series of discussions with him.  However, the absence of the attorney who negotiated the plea agreement for Tuimalealiifano may or may not have contributed to the problems evident in the plea colloquy and Tuimalealiifano's hesitation at one point during the colloquy. The Form K for the 2019 Case had to be changed on the morning of the change of plea hearing to reflect a plea of guilty, rather

43

than no contest, and Hironaka, rather than Althof, explained this change to Tuimalealiifano; on the other hand, Tuimalealiifano expressed no concerns or hesitancy over having to plead guilty (rather than no contest) to the single remaining charge in the 2019 Case.  The record does not demonstrate concern by Tuimalealiifano about proceeding with the plea hearing with Hironaka until after his pleas were entered, albeit before sentencing.

As the supreme court clarified in Pedro, although Tuimalealiifano offered no other argument that there was a fair and just reason for plea withdrawal before sentencing, it is necessary to conduct an expansive consideration of the fair and just inquiry.  Pedro, 149 Hawaiʻi at ___, 488 P.3d at 1253-54.  Although the guidance from Pedro was not available to the Circuit Court in this case, the evidentiary record concerning Tuimalealiifano's pleas and his motion for their withdrawal is well developed.  Pursuant to the majority opinion in Pedro, we thus consider the five-factor test articulated by the supreme court.  Id. at ___, 488 P.3d at 1254.

Here, Tuimalealiifano has never asserted innocence and expressly admitted guilt based on the facts supporting the subject charges.  There was no undue delay in requesting plea withdrawal.  While there is no indication that Tuimalealiifano's pleas were entered in haste, there was evident confusion regarding the mandatory minimum, misstatements regarding the

44

*nolle prosequi*, and last minute changes, including the representation by substitute counsel. Although the pleas were the result of months of negotiations initiated at Tuimalealiifano's direction, consultations between Tuimalealiifano and the attorney that negotiated the plea agreement on his behalf, and opportunities to review and reflect on the pleas in written form, the written form and oral colloquy were problematic.

While Tuimalealiifano's education ended with tenth grade, his maturity, mental faculties, and command of the English language seemingly equipped him to consider the implications of his pleas. Yet, he agreed with the Circuit Court even when the court misstated various parts of the plea agreement.

The last factor, any prejudice to the prosecution, was perhaps not as well developed in the record as the other <u>Pedro</u> considerations, but the State had put considerable effort into trial preparation and there had already been significant delays.

Finally, we address Tuimalealiifano's contention that the Circuit Court abused its discretion when it found his testimony not to be credible. Hawaiʻi appellate courts have long held that a trial court retains the power to "inquire into the truth and validity of the defendant's claims and representations." <u>Jim</u>, 58 Haw. at 579, 574 P.2d at 524. Thus, this court will not disturb the Circuit Court's determinations as to the credibility of Tuimalealiifano's testimony or as to

45

Althof's and Hironaka's testimonial declarations.  <u>Topasna</u>, 94 Hawaiʻi at 461, 16 P.3d at 866.

Even so, in light of the supreme court's mandate in <u>Pedro</u> that this court consider "whether there were <u>any</u> circumstances constituting a 'fair and just' reason for the pre-sentence withdrawal" of a defendant's pleas, we conclude that the circumstances of Tuimalealiifano's guilty pleas to the multiple, serious charges in the 2016 Case constituted such circumstances, and the plea agreement in the 2019 Case was negotiated as part of a coordinated deal.  Thus, we conclude that the Circuit Court erred when it denied Tuimalealiifano's request to withdraw his guilty pleas.

V.    <u>CONCLUSION</u>

For these reasons, the Circuit Court's October 5, 2020 Judgments are vacated, and these cases are remanded to the Circuit Court for further proceedings.

DATED: Honolulu, Hawaiʻi, November 30, 2021.

On the briefs:

Emmanuel G. Guerrero,
appearance on the
 Opening Brief only,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu,
appearance on the
 Answering Brief in
 CAAP NO. 20-690,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge

46

Landon M.M. Murata,
Deputy Attorney General,
State of Hawaiʻi,
appearance on the
 Answering Brief in
 CAAP NO. 20-691,
for Plaintiff-Appellee.

Kai Lawrence,
appearance on the
  Reply Brief only,
for Defendant-Appellant.